UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:14-cr-00309-GEB |
|---|---|
| Plaintiff, | |
| v. | **TENTATIVE RULINGS ON THE LOSS AND RESTITUTION AMOUNTS TO BE INCLUDED IN THE PRESENTENCE REPORT** |
| CARISSA CARPENTER, | |
| Defendant. | |

The parties disagree about what loss and restitution findings should be included in the Presentence Report ("PSR"). The United States of America (the "government") submitted to chambers on November 13, 2018 via email for in camera consideration a "Loss/Restitution Attachment (Revised 11/13/2018)" reflecting its position on these issues. The government requests that this attachment replace the loss and restitution attachments in the PSR. The government argues "that the total loss is $3,922,807.00 and the total restitution amount is $4,07[0],955.17."[1] Gov.'s Supplemental Memorandum re: Loss/Restitution ("Gov.'s Supp. Br.") at 4:8-9, ECF No. 137. The government contends that the restitution amount is $148,147.30[2] higher than the loss amount because the restitution amount takes into account the interest and fees of R.W.'s loss. Id. at 6:11-28. Defendant Carissa Carpenter ("Carpenter") counters that "the loss and restitution in this matter are both

---

[1] These totals are incorrect; specifically, the correct loss amount in the government's loss/restitution chart is $3,785,807.87 and the restitution amount is $3,933,955.17.

[2] The referenced difference is not the exact difference stated but the actual amount has no bearing on the ultimate decision herein.

1

less than $3.5 million." Def.'s Loss/Restitution Calculations ("Def.'s Supp. Br.") at 5:16-17, ECF No. 138. Carpenter argues since the loss amount is less than $3,500,000, her offense level in the PSR should only be enhanced 14 or 16 levels under U.S.S.G. § 2B1.1(b)(1)(H)-(I). Def.'s Formal Objections at 14-17, ECF No. 127; see PSR ¶ 53, ECF No. 121.

Carpenter contends that the government's loss and restitution figures are erroneous because "between $72,000 and $300,000 of [R.W.'s[3]] investment [which the government argues is a loss] has already been accounted for" "via the $1.15 million related to [J.A.I.]." Def.'s Supp. Br. at 4:4-7. The government argues R.W.'s investments are not part of the J.A.I. losses because R.W.'s investments occurred "months before the losses captured in the [J.A.I.] loss item, and in different amounts from any of the wire transfers from the [J.A.I.] account." Gov.'s Supp. Br. at 7:8-10. The government contends "the first wire transfer from [J.A.I.'s] account . . . [into Carpenter's account] for which the United States has evidence was $125,000 on March 9, 2007." Id. at 7:4-5. The government supports its argument by citing R.W.'s interview with the Federal Bureau of Investigation ("FBI"), in which R.W. explains he invested $300,000 through two payments of $150,000 made in 2006, months before the first J.A.I. wire transfer. Id. at 7:7-8. The government also argues that R.W. never stated he invested through J.A.I. Id. at 7:2-3. The evidence demonstrates that the government is correct, since R.W. made his investment months before the first J.A.I. account transfer and

---

[3] The victims are referenced by their initials for privacy reasons and since such sentencing information is not typically placed on the public docket.

2

since the J.A.I. transfer amounts do not match R.W.'s investment amounts. Therefore, this objection is overruled.

Carpenter also argues that S.Y.'s $25,000 investment is already included under J.A.I.'s losses because S.Y.'s investment was pooled with other investors as part of the $125,000 transfer from J.A.I. to Carpenter on March 9, 2007. Def.'s Supp. Br. at 4:8-15. The government disputes this characterization, arguing S.Y.'s investment was not included under J.A.I.'s losses because S.Y.'s investment was made a month before J.A.I.'s March 9, 2007 transfer to Carpenter. Gov.'s Supp. Br. at 7:26-8:4. However, despite S.Y. stating in his interview with the FBI that he made his investment in February 2007, S.Y. states in his victim impact statement that he wired $25,000 around the first week of March 2007. S.Y. Victim Impact Statement, ECF No. 121-3 at 7. Further, S.Y. states in his interview with the FBI that he invested $25,000 with J.A.I. and that this investment was pooled with four other investors because the minimum investment amount for one unit or share was $125,000. S.Y. Interview, ECF No. 137-3 at 1-2. The bank records provided by the government show that on March 9, 2007, J.A.I. paid Carpenter $125,000. Decl. of Special Agent Brandon Kutz ("Kutz Decl."), ECF No. 137-1 at 5. Since S.Y. states that he invested with J.A.I. in March 2007 and that this money was pooled with four other people for a total $125,000 investment, it is evident that S.Y.'s investment was a part of the $125,000 transfer from J.A.I. to Carpenter on March 9, 2007. Therefore, the evidence demonstrates that the government has double counted S.Y.'s investment with the J.A.I. loss amount. Cf. United States v. Vera, 893 F.3d 689, 694 (9th Cir. 2018) (encouraging "express

findings by a district court regarding the reliability of [evidence considered in connection with sentencing]"). Hence, this objection is sustained.

Carpenter also argues that a $125,000 wire transfer from I.F. on March 14, 2007 should not be included in the loss and restitution calculations because "[t]he government has not identified any specific investor (or inventors [sic]) related to this transaction." Def.'s Supp. Br. at 4:17-22. The government counters that "the circumstantial evidence demonstrates that this was an investment in Carpenter's fraud scheme." Gov.'s Supp. Br. at 4:16-17. Specifically, the government argues that this wire transfer should be included in the total loss and restitution amounts because the $125,000 was transferred into the same IPAHC bank account into which Carpenter received wire transfers and made deposits of payments in similar amounts from other victims around the same time, including investments made through financial entities. Gov.'s Supp. Br. at 4:17-24. Carpenter has not shown that I.F. is not an appropriate recipient of restitution. Therefore, this portion of Carpenter's argument is overruled.

Carpenter argues the $2,059.06 loss and restitution amounts for R.B.[4] should not be included in the loss and restitution

---

[4] On November 8, 2018, the government filed a victim impact statement from R.B. in which R.B. claims $5,000,000 in loss and restitution. R.B. Victim Impact Statement, ECF No. 133-1. However, R.B.'s victim impact statement did not explain the nature or circumstances of R.B.'s claimed loss. See United States v. Waknine, 543 F.3d 546, 557 (9th Cir. 2008) (finding "affidavits [filed in support of restitution order] were too summary and too conclusory to be sufficiently reliable"). Further, in its most recent Supplemental Memorandum, filed on November 13, 2018, the government removed the loss/restitution amount for R.B. from its total loss and restitution calculations because the bank records indicate a "sizable number of transfers of money back and forth between Carpenter and R.B." which make it "difficult to identify or reasonably estimate the amount of loss" for R.B. Gov.'s Supp. Br. at 1 n.1.

4

amounts because R.B. "received over $1.3 million" from Carpenter over the course of their romantic relationship. Def.'s Supp. Br. at 4:23-5:2. The government, however, has already removed this loss and restitution claim from its calculation of the total loss and restitution amounts. Gov.'s Supp. Br. at 1 n.1. This claim does not present a concrete controversy justifying judicial decision. Therefore, it is disregarded.

Carpenter challenges F.Y.'s $380,000 loss and restitution amounts, contending that four payments F.Y. made to Carpenter in the relevant period between 2009 and 2010 totaled only $125,800, not $380,000. Def.'s Supp. Br. at 5:3-11. F.Y. signed a victim impact statement in which F.Y. makes the conclusory claim that F.Y. invested over $380,000 in Carpenter's ventures. ECF No. 121-3. Carpenter supports her position, citing a telephone interview that the FBI conducted with F.Y. during which F.Y. estimated that F.Y. made three payments of $150,000, $100,000, and $60,000 to Carpenter. Ex. E to Def.'s Supp. Br. at 1. During that interview, F.Y. also stated that F.Y. provided Carpenter with a signed blank check, which Carpenter subsequently filled out for $60,000. Id. Bank records provided by both the government and Carpenter, however, evince that while F.Y. did make four payments to Carpenter between September and October 2009, these payments totaled only $125,800. Kutz Decl., ECF No. 137-1 at 11; Ex. F to Def.'s Supp. Br. The referenced bank records contradict the conclusory $380,000 amount in F.Y.'s victim impact statement. Therefore, this objection is sustained.

Carpenter also objects to a $12,000 payment from E.H.

being included in the loss and restitution amounts, contending that E.H. "was not an investor." Def.'s Supp. Br. at 5:12-13. The government counters that a $12,000 cashier's check dated January 10, 2010, payable to Carpenter from E.H. was deposited into Carpenter's bank account, and around this time Carpenter deposited checks or received wire transfers into the same account from other victims. Gov.'s Supp. Br. at 5:16-19. Carpenter provides a telephonic statement from E.H. in support of this objection, in which E.H. states E.H. has no recollection of ever issuing a check to Carpenter and denies having invested money with Carpenter. Ex. G. to Def.'s Supp. Br. Considering this telephonic statement and E.H.'s failure to file a victim impact statement, the government has not demonstrated that E.H.'s $12,000 payment should be included in the calculation of total loss and restitution. Therefore, this objection is sustained.

For the stated reasons, the total loss amount is $3,494,607.87 and the total restitution amount is $3,642,755.17. In light of the loss amount, ¶ 53 in the PSR concerning the specific offense characteristics is changed from an offense level 18 to an offense level 16. Therefore, the total offense level is 28 and the advisory guideline imprisonment range is 78-97 months.

Since the rulings herein resolve objections to the PSR, the court is required by Rule 32(i)(3)(C) to "append a copy of the court's [rulings] . . . to any copy of the presentence report made available to the Bureau of Prisons." Fed. R. Crim. P. 32(i)(3)(C).

Dated: November 16, 2018

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge