UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARISSA CARPENTER,<br><br>Defendant. | No. 2:14-cr-00309-TLN<br><br>**ORDER** |

This matter is before the Court on Defendant Carissa Carpenter's ("Defendant") Motion for Reconsideration. (ECF No. 241.) The Government filed an opposition. (ECF No. 242.) Defendant filed a reply. (ECF No. 244.) For the reasons set forth below, the Court GRANTS Defendant's motion.

///
///
///
///
///
///
///
///

I. **FACTUAL AND PROCEDURAL BACKGROUND**

On July 6, 2018, Defendant pleaded guilty to Counts One, Eight, and Thirty-One of the indictment for mail fraud and false statements to government agents. (ECF No. 95.) On November 16, 2018, the Court sentenced Defendant to a 78-month term of imprisonment, a 36-month term of supervised release, restitution in the amount of $3,642,755.17, and a special assessment of $300. (ECF Nos. 140, 145.) Defendant began her sentence on November 16, 2018 and is housed at Federal Medical Center Carswell ("FMC Carswell"). Her estimated release date is February 26, 2023.

On April 27, 2020, Defendant filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), arguing she should be released because her medical conditions — including multiple surgeries and a congenital AV block treated with a pacemaker — put her at significant risk if she contracts COVID-19. (ECF No. 207.) On June 1, 2020, the Court denied Defendant's request. (ECF No. 221.) On June 3, 2020, Defendant appealed. (ECF No. 222.)

On August 5, 2020 — while Defendant's appeal was pending before the Ninth Circuit — she filed a motion for reconsideration in this Court. (ECF No. 225.) Defendant argued the Court should reconsider its denial because since then, the number of COVID-19 cases at FMC Carswell increased substantially and Defendant herself was diagnosed with COVID-19. (*Id.*) On September 4, 2020, the Court denied Defendant's motion for reconsideration because it lacked jurisdiction to grant the motion while her appeal was pending. (ECF No. 239.)

On September 15, 2020, Defendant voluntarily dismissed her appeal. (ECF No. 240.) That same day, Defendant filed the instant motion for reconsideration with this Court. (ECF No. 241.) Defendant argues that because she dismissed her appeal, the Court now has jurisdiction to rule on her motion to reconsider. (*Id.*)

II. **STANDARD OF LAW**

"The Ninth Circuit allows parties to file motions for reconsideration in criminal cases, although the Federal Rules of Civil Procedure do not explicitly provide for such motions." *United States v. Amezcua*, No. 1:93-CR-5046-AWI-1, 2015 WL 5165235, at *1 (E.D. Cal. Sept. 2, 2015), aff'd, 670 F. App'x 454 (9th Cir. 2016) (citing *United States v. Martin*, 226 F.3d 1042,

2

1047 n.7 (9th Cir. 2000)). Pursuant to Local Rule 430.1(i), a party filing a motion for reconsideration of a criminal order must show "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion" and "why the facts or circumstances were not shown at the time of the prior motion." Local Rule 430.1(i); *see also United States v. Braswell*, No. 118-CR-00034-DAD-BAM, 2018 WL 8805375, at *1 (E.D. Cal. Sept. 11, 2018).

### III. ANALYSIS

In moving the Court to reconsider its denial of compassionate release, Defendant argues COVID-19 cases at FMC Carswell increased substantially since the Court's denial.[1] (ECF No. 225 at 5.) In her reply, Defendant adds that she was diagnosed with COVID-19 on August 18, 2020, and she submits updated medical records to support her claim. (ECF No. 232 at 5.) Defendant argues these "new or different" circumstances warrant reconsideration. The Court agrees. In previously finding Defendant had not shown "extraordinary and compelling" reasons for release under 18 U.S.C. § 3582(c)(1)(A)(i), the Court emphasized that the Bureau of Prisons ("BOP") reported zero COVID-19 cases at FMC Carswell at that time. Now, the BOP reports there are three active inmate cases, 522 inmates have recovered, and six inmates have died at the facility. These new facts warrant reconsideration under Local Rule 430.1(i).

Defendant is 57 years old and has a lengthy medical history, including nine past heart attacks, six pacemaker surgeries, and two surgeries to remove blood clots. Defendant also suffers from a congenital AV block.[2] In opposition, the Government argues "it is unclear" if Defendant's congenital AV block is considered a "serious heart condition." (ECF No. 210 at 16.) The

---

[1] The Court agrees that Defendant's voluntary dismissal of her appeal constitutes a "new or different" circumstance under Local Rule 430.1(i) because the Court now has jurisdiction to reconsider the merits of its previous ruling. The Court therefore addresses the parties' arguments related to Defendant's first motion for reconsideration, which the parties incorporated by reference.

[2] In the PSR, the probation officer expressed concerns that Defendant may have embellished her medical conditions, but the probation officer verified Defendant's medical procedures after reviewing her "voluminous" medical records.

3

Government also argues Defendant's pacemaker is functioning and adequately treating her condition. (*Id.*) The Government's arguments are unpersuasive. The Centers for Disease Control and Prevention ("CDC") has identified several medical conditions — including serious heart conditions and heart failure — that place individuals at increased risk of severe illness from COVID-19. *See* Centers for Disease Control, Coronavirus Disease 2019 (COVID-19), Other Conditions Related to Heart Disease, https://www.cdc.gov/heartdisease/other_conditions.htm (last visited September 28, 2020). Defendant has a congenital AV block, a pacemaker, hypertension, and a documented history of heart conditions dating back to 1991. The recent outbreak at FMC Carswell, which resulted in the death of six inmates, amplifies the Court's concerns about Defendant's health considerably. The Government emphasizes that Defendant was already diagnosed with COVID-19, suffered mild symptoms, and recovered without any complications. (ECF No. 242 at 3–4.) Yet such an argument ignores the possibility that Defendant may become infected again even if she fully recovers. Lastly, at 57 years old, Defendant's age also places her at greater risk of severe illness from COVID-19. *See* Centers for Disease Control, Coronavirus Disease 2019 (COVID-19), Older Adults, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited September 28, 2020).

In sum, circumstances have changed since the Court's previous ruling. Not only do Defendant's age and medical conditions put her at a higher risk, but she is housed at a facility that recently experienced a significant COVID-19 outbreak. The prevalence of COVID-19 at this facility puts Defendant at great and particularized risk due to her well-documented, serious, and ongoing heart conditions. For these reasons, Defendant has met her burden to demonstrate she is subject to a serious or unrecoverable condition that substantially diminishes her ability to provide self-care within a BOP facility. *See* U.S.S.G. § 1B1.13, cmt. n. 1(A). As such, the Court finds there are now extraordinary and compelling reasons for Defendant's release.

Before granting release, however, the Court also must consider (1) whether Defendant is a danger to the community and (2) the 18 U.S.C. § 3553(a) ("§ 3553(a)") factors. *See* U.S.S.G. § 1B1.13(2) (requiring courts to determine that a defendant is not "a danger to the safety of any

4

other person or to the community" before granting compassionate release); *see also* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors).

As to whether Defendant is a danger to the community, it is undisputed that Defendant's fraud-related crimes were non-violent. It also bears mentioning that Defendant has no prior criminal history. Notably, the Government does not argue Defendant poses a continuing danger to the community. Based on the record before the Court, Defendant does not appear to pose a danger to the community.

As to the § 3553(a) factors, the Court previously concluded that the nature and circumstances of the offense and Defendant's history and characteristics weigh against a sentence reduction. Defendant's crimes undoubtedly devastated her victims — that is no less true now than it was before. However, the § 3553(a) factors specifically include the need to provide Defendant with medical care in the most effective manner. *See* 18 U.S.C. § 3553(a)(2)(D). Since the outbreak at FMC Carswell, COVID-19 poses a real — rather than hypothetical — threat to Defendant's life. Taking these changed circumstances into account, the Court believes the time Defendant has spent in prison constitutes a just punishment for her undeniably serious criminal offenses and is sufficient to deter such conduct in the future and protect the public from further crimes. Put simply, keeping Defendant imprisoned longer would endanger Defendant's health without improving upon the purposes of sentencing.

**IV.     CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion for Reconsideration. (ECF No. 241.) Accordingly, the Court modifies Defendant's sentence of imprisonment to time served followed by the 36-month term of supervised release imposed in the previous sentence.

In addition, the Court imposes a special condition of supervised release that Defendant be subject to a 24-month period of home confinement, to begin as soon as possible after her release. The terms of the special condition are as follows:

> Defendant shall be monitored for a period of twenty-four (24) months, with location monitoring technology, which may include the use of radio frequency (RF), Global Positioning System (GPS)

devices, Voice Recognition or SmartLink, at the discretion of the probation officer. Defendant shall abide by all technology requirements, which could include the requirement of a cellular phone (SmartLink) or the installation of a landline (VoiceID). Defendant shall pay the costs of location monitoring based upon their ability to pay as directed by the probation officer. In addition to other court-imposed conditions of release, Defendant's movement in the community shall be restricted as follows:

Defendant shall be restricted to her residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the probation officer.

The Government shall serve a copy of this Order on the warden at FMC Carswell forthwith. Defendant shall be released only after all release plans are in place.

IT IS SO ORDERED.

DATED: September 30, 2020

Troy L. Nunley
United States District Judge